UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


DAMIEN A. SUBLETT,                )
                                  )
     Plaintiff,                   )   Civil Action No. 15-016-JMH
                                  )
V.                                )
                                  )        **MEMORANDUM OPINION**
SGT. JUSTIN T. BRYANT, et al.,    )            **AND ORDER**
                                  )
     Defendants.                  )

                 **        **        **        **        **

Damien A. Sublett is an inmate in custody of the Kentucky Department of Corrections and is presently confined in the Northpoint Training Center ("NTC") in Burgin, Kentucky. Proceeding *pro se*, Sublett has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that defendant Sgt. Justin T. Bryant, a prison official at NTC, violated his constitutional right of access to the court and his right to file grievances without incurring retaliation for such action. [R. 1] Based on alleged events that have occurred subsequent to the filing of the original complaint, as previously supplemented, Sublett has also filed a second motion for leave to file a supplemental complaint, naming three additional NTC prison officials as defendants to this action: (1) Brad Adams, NTC staff, (2) Jamie Moreland, NTC staff, and (3) Michael D. Long, NTC staff.  [R. 8] Sublett submitted his proposed Amended

Complaint with this motion. [R. 8-1] Sublett seeks compensatory and punitive damages.

Prior to the present motion for leave to file a supplemental complaint, Sublett previously amended his complaint, as was permitted by Fed. R. Civ. P. 15(a)(1). Additional amendments to a complaint are permitted "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). This rule further provides that the "court should freely give leave when justice so requires." *Id.* The decision as to whether justice requires the amendment is committed to the sound discretion of the trial court. *Zenith Radio Corp. V. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In this case, Sublett's complaint has yet to be served to any of the defendants, as his complaint is subject to the screening required by 28 U.S.C. §§ 1915(e)(2), 1915A. Thus, at this juncture, neither the originally-named defendant nor the three proposed new defendants will be prejudiced by any amendment to the complaint. Upon consideration, Sublett's second motion to file a supplemental complaint [R. 8] will be granted, and his proposed Amended Complaint [R. 8-1] will be filed, and its screening is incorporated herein.

The Court screens civil rights complaints pursuant to 28 U.S.C. § 1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08

2

(6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys.  *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).  The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff.  *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).  Under  28 U.S.C. § 1915(e)(2), a district court has authority to dismiss a case at any time if it determines either that the action is frivolous or malicious, or if it fails to state a claim upon which relief can be granted.

CLAIMS ASSERTED

Sublett's complaint stems from an alleged incident occurring while he was naked in the bathroom during the evening of January 9, 2015.  Sublett claims that Ms. Parret, a female correctional officer, stopped in the bathroom doorway and stared at his penis while he was using the bathroom.  Specifically, Sublett states:

> . . . as he entered the Bathroom in the second stall
> closes[t] to the entry of the doorway, Ms. Parret stop
> [sic] at the entrance of the bathroom doorway and
> starred at Sublett's penis while Sublett was
> urinating.  Ms. Parret then took a step closer until
> she broke the threshold of the bathroom door, without
> completely entering the bathroom, at this _____, Ms.
> Sublett was about a foot and a half from Mr. Sublett's
> arm reach.  On 3 different occasions while making her
> rounds between count and 30 minute walks, each time

> Ms. Parret would stop and look at Mr. Sublett's penis
> same position, when Sublett used the bathroom.

[R. 1, pp. 2-3]

After this incident, Sublett states that he spoke with Officer Bryant about filing a grievance against Ms. Parret for staring at him while he was naked in the bathroom and using the bathroom, and that Officer Bryant told him he could not file that grievance because Ms. Parret had stated, and the camera would show, that she only looked at him for a couple of seconds on three different occasions and that she did not stare at him. In short, Sublett claims that Officer Bryant told him that if he filed a grievance against Ms. Parret, "he would write Sublett up." [R. 4, p. 4]

Sublett filed a grievance against Ms. Parret, which resulted in his being "written up for file [sic] an [sic] complaint on Ms. Parret on 1-9-15." *Id.* Sublett claims that he filed a grievance against Ms. Parret because she had violated his Fourth Amendment right to privacy and that Officer Bryant issued a disciplinary report[1] against him "to curtail plaintiff from filing an [sic] grievance and filing a civil action under 1983. The motivation behind the write-up was predicated on

---

[1]Sublett was charged with obtaining money/goods/privileges/services w/ false pretenses. [R. 1-1, Page ID# 32] It is unknown to the Court whether Sublett was convicted of or acquitted of this offense or perhaps a lesser offense.

Sublett's 4th Amendment right to privacy." [R. 1, p. 5] In essence, Sublett claims that he was "written up" in retaliation for filing a grievance against Ms. Parret, in violation of his First Amendment right to file a grievance and access the Court without suffering retaliation. *Id.*

Subsequently, on March 3, 2015, Sublett filed what he describes as a PREA-grievance[2] against another female correctional officer, Dusty McKinny, alleging in part that: "c/o Dusty McKinny came to his bed area and stared at his crotch while he was lying in bed wearing only boxer shorts." [R. 8-1, p. 1] Sublett requested:  "To exercise my right to privacy and to file grievance be it a PREA Complaint verbally or on paper with[out] fear of reprisal for utilizing my 1st Amendment right, as well as the filing of this grievance."  *Id.*

Sublett claims that on March 4, 2015, the day after he had filed a grievance against c/o Dusty McKinny, Lt. Michael Long issued a disciplinary report against him for being loud when talking to Lt. Long about McKinny and for not complying with Lt. Long's directive to stop speaking. [R. 8-1, p. 2] Thereafter, Sublett claims that on March 12, 2015, Officer Brad Adams filed

---

[2]With Sublett's use of the acronym PREA, he is referring to the Prison Rape Elimination Act, codified at 42 U.S.C. § 15601, *et seq*.

a disciplinary report against him for filing a grievance against c/o Dusty McKinny because, as charged in the disciplinary report, Sublett's grievance against her was based on a falsified claim, and the incident was unfounded. [R. 8-1, p. 2]

Thereafter, Sublett states that on April 7, 2015, c/o Carroll, a Special Management Unit ("SMU") security official, came to his cell and told him to get dressed to go to classification. Sublett responded that he had not received any prior notice of being scheduled to meet with classification and that he will not get his yearly reclassification until May of 2015. Sublett states that after that conversation, c/o Carroll left.

On April 9, 2015, two days later, Sublett states that CTO Jamie Moreland came to his cell in the SMU and harassed him for filing PREA-grievances and law suits and told him he would "make sure you never leave SMU, . . . ." [R. 8-1, p. 3] Two days later, on April 11, 2015, Sublett states that CTO Jamie Moreland issued a disciplinary report against him for refusing to attend classification committee, when he had been informed of the classification meeting on 4-7-15. [R. 8-1, p. 4] Sublett appears to have been sanctioned with a 30-day loss of good time credit for this offense. *Id.*

To summarize, the gravamen of Sublett's claims is that the defendants have violated his constitutional rights to file

6

grievances and his right of access to the courts by charging him with bogus disciplinary offenses in retaliation for his filing grievances against female prison officials who he believes have violated his privacy rights.   For the reasons explained hereafter, the Court will allow a portion of Sublett's claims to proceed and require a response from the defendants.

## DISCUSSION

To assert a viable claim under § 1983, a plaintiff must establish that his constitutional rights were violated by one acting color of law.   It appears that plaintiff's claims are confined to claims arising solely under federal law and that plaintiff's complaint contains no state law claims.

## A.   Retaliation

Sublett claims that all of the disciplinary reports issued against him were done in retaliation for his filing grievances against the female prison officers for violating his privacy rights and/or his filing a lawsuit concerning these alleged violations of his constitutional rights.   Thus, his retaliation claim is based on his First Amendment right to petition the government for a redress of grievances.

A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974).   Retaliation

based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.   *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*).   To establish a First Amendment retaliation claim, the plaintiff must prove: (1) that the plaintiff was engaged in constitutionally protected conduct; (2) that the defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between elements one and two, *i.e.*, the adverse action was motivated at least in part by the plaintiff's protected conduct.   *Thaddeus-X*, 175 F.3d at 395; *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).   The plaintiff has the burden of proof on all three elements.   *See*, *e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003); *Green v. Tudor*, 685 F.Supp.2d 678, 692 (W.D. Mich. 2010).

Moreover, the plaintiff must be able to prove that the exercise of the right to engage in the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct.   *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).   If the plaintiff is able to make such a showing, the burden of proof shifts to the defendant to show that the defendant would have taken the same action in the absence of the plaintiff's protected conduct.   *Id.*; *Smith*, 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 399.

The filing of *non-frivolous* grievances is protected conduct under the First Amendment. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf"). At this juncture, the Court will assume *arguendo* that Sublett has established the first prong of the *prima facie* case, *viz.*, that with the filing of grievances concerning (1) being stared at by a female correctional officer while he was undressed in the bathroom and while urinating, and (2) being stared at by a female correctional officer while lying in bed in his cell and wearing only boxer shorts, he had engaged in constitutionally-protected conduct.

The second element of the *prima facie* retaliation claim concerns the defendant's adverse action. To establish the second element of the *prima facie* retaliation claim, Sublett would be required to show that the issuance of disciplinary reports against him deterred him from continuing to engage in constitutionally-protected conduct. As to the third prong of the *prima facie* case, Sublett is required to show a causal connection between elements one and two.

Assuming the truthfulness of Sublett's claims, and construing the claims in his favor, as the Court must do at this juncture, the Court concludes that he has arguably established a

9

*prima facie* retaliation claim. As such, the defendants must be given an opportunity to rebut this claim.

**B.    Prison Rape Elimination Act ("PREA")**

In his complaint and amended complaint, Sublett refers to having filed a "PREA-grievance" against the two female correctional officers at NTC who he claims have violated his privacy rights. To the extent that Sublett may be attempting to assert a PREA claim in this action, such claim is without merit because the PREA does not provide a private right of action. Where neither the text nor the structure of a statute indicate that Congress intended to create new individual rights, "…there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002). The Sixth Circuit Court of Appeals has not addressed this issue, but many district courts (including our sister court in the Western District of Kentucky) have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff. *See*, *e.g., Simmons v. Solozano*, No, 3:14CV-P354-H, 2014 WL 4627278, at *4 (W.D. Ky. Sept. 16, 2014) (dismissing prisoner's § 1983 claim alleging violations of the PREA, finding that the statute creates no private right of action); *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19, 2014) ("[T]his Court concludes that the PREA creates no private right of

action."); *Chapman v. Willis*, No. 7:12-CV-00389, 2013 WL
2322947, at *4 (W.D. Va. May 28, 2013) ("There is no basis in
law for a private cause of action to enforce a PREA
violation."); *Holloway v. Dep't of Corr.*, No. 3:11-CV-1290(VLB),
2013 WL 628648, at *2 (D. Conn. Feb. 20, 2013) ("There is
nothing in the PREA that suggests that Congress intended it to
create a private right of action for inmates to sue prison
officials for non-compliance to the Act.").[3]

Given this considerable authority, this Court agrees with
the Western District and concludes that the PREA creates no
private right of action.  Therefore, to the extent that Sublett
is asserting claims of PERA violations by two female NTC
correctional officers, those claims must be dismissed for
failure to state a claim upon which relief can be granted.

_____

[3]*See also*, *Faz v. N. Kern State Prison*, No. CV-F-11-0610-LJO-
JLT, 2011 WL 4565918, at *5 (E.D. Cal. Sept. 29, 2011) ("[T]he
PREA does not create a private right of action...."); 
*Woodstock v. Golder*, No. 10-CV-00348-ZLW-KLM, 2011 WL 1060566,
at *9 (D. Colo. Feb. 7, 2011) ("PREA provides no private right
of action.") (citation omitted).  "The PREA is intended to
address the problem of rape in prison, authorizes grant money,
and creates a commission to study the issue.... The statute
does not grant prisoners any specific rights." *Chinnici v.
Edwards*, No. 1:07-CV-229, 2008 WL 3851294, at *3 (D. Vt. Aug.
12, 2008).

**CONCLUSION**

Accordingly, for the reasons stated above, **IT IS ORDERED** as follows:

(1) Plaintiff Damien A. Sublett's motion for leave to file a supplemental complaint [R. 8] is **GRANTED**, and Sublett's Amended Complaint attached thereto [R. 8-1] **SHALL BE FILED**.

(2) Sublett's claims for violations of the Prison Rape Elimination Act ("PREA") 42 U.S.C. § 15601, *et seq.*, are **DISMISSED** for failure to state a claim for which relief can be granted.

(3) Sublett's First Amendment retaliation claims asserted against Sgt. Justin T. Bryant, NTC staff, (2) Brad Adams, NTC staff, (3) Jamie Moreland, NTC staff, and (4) Michael D. Long, NTC staff, shall proceed.

(4) The Clerk shall prepare the documents necessary for service of process upon:

a. Sgt. Justin T. Bryant, Correctional Officer, Northpoint Training Center;

b. Brad Adams, Correctional Officer, Northpoint Training Center;

c. Jamie Moreland, Correctional Officer, Northpoint Training Center, and

d. Michael D. Long, Correctional Officer, Northpoint Training Center.

(5)  The Clerk shall prepare a "Service Packet" consisting of the following documents for service of process upon these defendants:

a.   a completed summons form;

b.   the Complaint and Amended Complaint  [R. 1; R. 6; R. 8-1];

c.   this Order; and

d.   a completed United States Marshal's Service ("USMS") Form 285.

(6)  The Clerk shall provide the Service Packet(s) to the United States Marshal's Office in Lexington, Kentucky.

(7)  Service of Process upon Defendants Sgt. Justin T. Bryant, Brad Adams, Jamie Moreland, and Michael D. Long, shall be conducted by the USMS by serving a Service Packet **personally** upon each of them, through arrangements made with Northpoint Training Center.

The USMS is responsible for ensuring that each defendant is successfully served with process.  In the event that an attempt at service upon a defendant is unsuccessful, the USMS shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

(8)  The Clerk is further directed to serve a copy of this Order on the Kentucky Department of Corrections, and to note the service in the docket sheet;

13

(9)  The plaintiff **SHALL**:

a.  Immediately advise the Clerk's Office of any change in his current mailing address.  **Failure to do so may result in dismissal of this case**.

b.  Communicate with the court *solely* through notices or motions filed with the Clerk's Office.  **The court will disregard correspondence sent directly to the judge's chambers.**

c.  In every notice, motion, or paper filed with the court, certify in writing that he has mailed a copy to every defendant (or his or her attorney) and state the date of mailing.  **The court will disregard any notice or motion which does not include this certification.**

This the 20th day of May, 2015.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge