UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | |
|---|---|
| DAMIEN A. SUBLETT, | ) |
| Plaintiff, | ) Civil Action No. 15-016-JMH |
| V. | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| SGT. JUSTIN T. BRYANT, et al. | ) |
| Defendants. | ) |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on the defendants' Motions for Summary Judgment [DE 26, 27, 28, and 29). The plaintiff has responded to each motion and the defendants have each replied, and these motions are now ripe for decision. The allegations in the Complaint relate to one fact pattern and the legal issues regarding each Defendant's Motion for Summary Judgment are substantially similar, therefore, the Court will rule on all four motions, as well as Plaintiff's Motion to Strike Affidavit of Brad Adams [DE 35] and Motion to Dismiss the Defendants' Motions for Summary Judgment [DE 41], in this Memorandum Opinion and Order.

## I. Factual Background

Plaintiff Damien A. Sublett is an inmate at the Northpoint Training Center ("NTC") in Burgin, Kentucky. He appears *pro se* in this action, claiming that each of the defendants unlawfully retaliated against him for exercising his First Amendment Rights

as related to grievances he filed against correctional officers, all in violation of 42 U.S.C. § 1983.

On January 8, 2015, Plaintiff alleged that Correctional Officer Tonya Parrett "stared at him for approximately 30 seconds while he was in the bathroom urinating, making him feel uncomfortable and violating his privacy rights." [DE 29, Def. Justin Bryant's Mem. in Supp. Mot. Summ. J., Ex. A, Extraordinary Occurrence Report.] An investigation commenced. It is undisputed that Defendant refused to provide a written statement as to the nature of his allegations. [*Id.*] Correctional Sergeant Justin Bryant, one of the defendants in this matter, was the Prison Rape Elimination Act ("PREA") contact at that time. Defendant Bryant reviewed camera footage, interviewed Officer Parrett, and questioned Plaintiff about the incident. The camera footage showed Officer Parrett in the doorway to the bathroom for approximately two or three seconds. Plaintiff refused a medical exam, and when asked by a nurse to describe the incident, Plaintiff "refused, stating there was no story to tell." [*Id.*] As a result of the investigation, Defendant Bryant prepared an NTC Informational Report as well as a summary of the incident to support possible disciplinary action against Plaintiff for lying to staff. These reports became the basis of a disciplinary action against Plaintiff that resulted in Plaintiff being found guilty of the charge of "obtaining money/goods/privileges/services with false pretenses."

Plaintiff received 45 days in disciplinary segregation (suspended for 90 days) as a punishment.

Plaintiff alleges that Defendant Bryant's involvement in investigating and documenting the incident on the NTC Informational Report and the disciplinary summary violated his First Amendment right to file a grievance.

Approximately two months later, Plaintiff accused Correctional Officer Dusty McKinney of approaching his bed area and staring at his crotch while he was lying in bed wearing only boxer shorts. [DE 28, Def. Michael Long's Mem. in Supp. Mot. Summ. J., Ex. A, Extraordinary Occurrence Report, "EOR".] In reporting this incident to Lieutenant Michael Long (Defendant in this lawsuit) and Correctional Officer Anthony Hall (not a party to this lawsuit), the situation escalated. Officer Hall placed Plaintiff in handcuffs at the direction of Defendant Long. Defendant Long escorted Plaintiff to the medical center, where he stated he wanted to file a PREA report. According to the EOR dated March 3, 2015, Plaintiff became "belligerent" and "aggressive." [*Id.*] Upon arrival at the medical center, Plaintiff was released from handcuffs and allowed to complete the PREA report. Defendant Long notified the PREA Compliance Manager, Brad Adams (another Defendant to this lawsuit) of the situation.

NTC Deputy Warden Gary Prestigiacomo conducted the PREA investigation, which included interviewing the involved parties,

3

two witnesses, and footage from seven video cameras. Based on the investigation, particularly the camera footage, Deputy Warden Prestigiacomo concluded "there is no way Office McKinney can be in a position to see his crotch" and the "incident is unfounded." [DE 28, Def. Michael Long's Mem. in Supp. Mot. Summ. J., Ex. B, PREA Investigation Report.] Defendant Adams documented the situation in an incident report, which summarized the Deputy Warden's findings. This was the extent of Defendant Adams' involvement in the pertinent facts giving rising to this lawsuit.[1] Based on the investigation and decisions of other BOP personnel (not parties to this lawsuit), Plaintiff was subject to disciplinary action arising from the incident and the report by Defendant Adams.

The events described above ultimately resulted in Plaintiff being found guilty of five disciplinary violations between January and March, 2015: "(1) obtaining money/goods/privileges/services with false pretenses, (2) refusing or failing to obey an order, (3) tampering with physical evidence or hindering investigation, (4) indecent exposure, and (5) disrespectful

---

[1] Plaintiff alleges Defendant Adams approached him on March 12, 2015, and stated "every PREA Grievance you file no matter how substantiated in [sic] may be, I'll have it investigated and determined unfounded and write you up, I break you [sic] from all this Grievance's [sic] and PREA's and Law Suit [sic]." [DE 10, Amended Compliant, ¶ 9.] In his sworn Affidavit, Defendant Adams stated to the best of his knowledge he has never spoken to Plaintiff and, according to the Staff Entry/Exit Log for March 12, 2015, he was not within the secure perimeter of the institution on that date. [DE 26, Def. Brad Adams' Mem. in Supp. Mot. Summ. J. Ex. D, Aff. Brad Adams, ¶ 8; DE 44, Reply in Supp. Def.'s Mot. Summ. J., Ex. A.]

4

language/gestures/actions towards non-inmate." [DE 27, Def. Jamie Moreland's Mem. in Supp. Mot. Summ. J., Ex. A, Aff. Jamie Moreland, ¶ 4.] Classification and Treatment Officer Jamie Moreland (Defendant in this lawsuit) was tasked with completing a "reclassification" for Plaintiff based on the five disciplinary violations in such a short period of time. It is undisputed that Plaintiff refused to attend his Classification Committee meeting on April 9, 2015. [*Id.* at ¶ 1., Am. Comp. ¶¶ 12-15.] Defendant Moreland prepared an incident report explaining Plaintiff's refusal to attend the meeting. This resulted in yet another disciplinary action against Plaintiff for failure to attend the meeting. Plaintiff avers that Defendant Moreland drafted the incident report in retaliation for filing the PREA grievance against Officer McKinney.

## II. PROCEDURAL ISSUES

The Court will first address the outstanding procedural issues. Plaintiff moves the Court to strike the Affidavit of Brad Adams [DE 35] based upon Defendant Adams' lack of personal knowledge of the events he testifies to in the Affidavit. An affidavit supporting a motion for summary judgment must satisfy three formal requirements: (1) it "must be made on personal knowledge"; (2) "set out facts that would be admissible in evidence"; and (3) it "show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P.

5

56(c)). "The rule requires a scalpel, not a butcher knife," and the court "should disregard only those portions of an affidavit that are inadequate and consider the rest." *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001)(quoting *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 531(5th Cir. 1992).

The Court finds that only ¶ 5 of Defendant Adams' Affidavit contains inadmissible hearsay, in his descriptions of the actions of Deputy Warden Prestigiacomo in investigating the PREA grievance against Officer McKinney. Defendant Adams admits he did "nothing more than summarize the findings of Deputy Warden Prestigiacomo's PREA investigation." [DE 26, Def.'s Mem. in Supp. Mot. Summ. J., pg. 7.] While Defendant Adams has personal knowledge of the content of the forms he summarized, the Court agrees with the plaintiff that Defendant Adams does not have personal knowledge of the actions Deputy Warden Pretigiacomo took during his investigation. Thus, the following portion of Defendant Adams' Affidavit will be stricken from the record and not considered in deciding these dispositive motions:

> Deputy Warden Pretigiacomo interviewed Inmate Sublett, two additional inmate witness, and Officer McKinney. He also reviewed available camera footage from seven (7) security cameras.

6

[DE 26, Affidavit of Brad Adams, ¶ 5.] The remainder of Defendant Adams' Affidavit will remain in the record for consideration in deciding the motions at issue.

Plaintiff also filed a Motion to Dismiss the defendants' motions for summary judgment [DE 41]. Based on the content of the Motion, the Court construes this Motion as a supplemental Response to defendants' motions for summary judgment [DE 26, 27, 28, and 29]. For the reasons stated below, the Court will deny Plaintiff's motion and grant each of the defendants' motions.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant must show the district court that no genuine issue of material fact exists, and the Court must view all evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in the nonmoving party's favor. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). There is a genuine issue of material fact only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Thus, the Court considers "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

7

it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

## IV. ANALYSIS

To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must establish "two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz v. Charter Tp. of Comstock,* 592 F.3d 718, 722 (6th Cir.2010).

Plaintiff claims that each of the defendants in this lawsuit retaliated against him for exercising him First Amendment right to file a grievance by filing a disciplinary report against him. "[R]etaliation for the exercise of constitutional rights is itself a violation of the Constitution." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). A retaliation claim includes three elements, all of which must be satisfied: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id*. Plaintiff's retaliation claim against each defendant fails on the first and third elements, as discussed below.

**A. Plaintiff was Not Engaged in Protected Conduct**

8

An inmate's First Amendment right to file grievances against prison officials is protected only if the grievances are not frivolous. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2010). "Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." *Lewis v. Casey*, 518 U.S. 343, 353 (1996).

In two months' time, Plaintiff twice alleged that two different correctional officers stared at his genitals. On both occasions, prison officials investigated the incident through interviews and viewing the security camera footage. In both incidents, prison officials found no evidence to support Plaintiff's claims. In both instances, it is undisputed that when Plaintiff realized his verbal complaints were being treated as formal grievances, he refused to cooperate with the investigations, even indicating at some point he did not wish to pursue the matters. ("I just would like to forget this." DE 26, Def.'s Memm. Supp. Summ. J., Ex. A.; "[T]here [is] no story to tell." DE 29, Def. Justin Bryant's Mem. in Supp. Mot. Summ. J., Ex. A.]

Plaintiff has presented no facts to support his allegations in the Complaint and Amended Compliant, whereas Defendants have presented significant facts and evidence in support of their motions for summary judgment; facts and evidence Plaintiff has not

9

disputed. Plaintiff does not dispute Defendants' assertions that videos of the January incident does not show Parrett improperly staring at his genitals. Plaintiff weakly disputes Defendants' claim that the seven security cameras which captured the March incident show no wrongdoing on the part of Officer McKinney. He claims Deputy Warden Prestigiacomo told him that "it was to [sic] dark in the bed area to see exactly what occurred as to where c/o McKinney was exactly looking." [DE 37, Pl.'s Response to Def. Brad Adams' Mot. Summ. J., pg. 3.] Plaintiff does not dispute, however, the content of the video as described in the PREA Investigation Summary [DE 26, Ex. A].

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Plaintiff instituted two grievances based on two different prison officers staring at his genitals within a short time frame; both were determined to be "unfounded" by prison officials after thorough investigation. The Court notes Plaintiff filed a similarly frivolous grievance again in August 2015, accusing yet a third correctional officer of staring at his genitals. Plaintiff subsequently filed a lawsuit in the Western District of Kentucky for retaliation after receiving disciplinary action for filing that frivolous grievance. *See Sublett v. Sheets*, No. 5:15-cv-P199-TBR, 2015 WL 9236028 (W.D. Ky. Dec. 16, 2015). The Court dismissed that action pursuant to 28 U.S.C. § 1915A(b)(1).

10

The Court finds Plaintiff's grievances lacked an arguable basis in fact, were determined to be "unfounded" by prison officials, and are substantially similar to other complaints Plaintiff has made in the past, which also failed. Because an inmate has no constitutional right to file frivolous grievances, the Court holds that Plaintiff was not engaged in protected conduct, and, thus, cannot sustain a claim for retaliation against any of the defendants.

**B. The Disciplinary Actions were not Motivated by Protected Conduct**

Having found that the Plaintiff cannot prove the first element of a claim for retaliation, the Court does not need to move on the other two elements; however, the Court would like to briefly address the third element of Plaintiff's retaliation claim because of the similarities between this case and Plaintiff's 2015 case in the Western District, *Sublett v. Sheets*. *Id.* As in *Sheets*, Plaintiff does not allege herein that the disciplinary reports filed against him for belligerent and aggressive behavior were false. He admits he did not stop speaking when told to do so. [DE 10, Am. Compl., ¶ 8.] He further admits that he refused to attend the reclassification meeting in April, which ultimately led to further disciplinary action. [DE 10, Am. Compl., ¶¶ 12-15.] As the Court stated in *Sheets*:

11

> Significantly, however, the Sixth Circuit has specifically held that a plaintiff who complains that the adverse action taken against him was a substantiated misconduct charge fails to state a retaliation claim. *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005). This is because "a finding of guilt upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.' " *Id*. (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)).

*Sublett v. Sheets*, No. 5:15-cv-P199-TBR, 2015 WL 9236028, at *3 (W.D. Ky. Dec. 16, 2015).

## V. CONCLUSION

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).  The Court finds that Plaintiff's claims of retaliation are not supported by sufficient evidence to withstand Defendants' Rule 56 motions and summary judgment in favor of the defendants is appropriate.  Accordingly, **IT IS ORDERED:**

   (1) The Motions for Summary Judgment filed by Defendants Adams, Moreland, Long, and Bryant [DE 26, 27, 28, and 29] are **GRANTED;**

(2) Plaintiff's Motion to Strike Affidavit of Brad Adams [DE 35] is **GRANTED** and the relief sought is **GRANTED IN PART and DENIED IN PART**; and

(3) Plaintiff's Motion to Dismiss Defendant Bryant, Adams, Moreland, and Long's Motions for Summary Judgment [DE 41], is **DENIED**.

This the 22nd day of June, 2016.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge